David E. Gevertz
(*Pro Hac Vice* Pending)
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
3414 Peachtree Road, N.E., Suite 1500
Atlanta, GA 30326
T: 404.221.6512
dgevertz@bakerdonelson.com
Attorney for Plaintiff

Aaron B. Millar, Bar No. 12368
MILLAR LEGAL
5200 S. Highland Dr. Suite 300
Salt Lake City, Utah 84117
(801) 424-5280
aaron@millarlegal.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**NORTHERN DIVISION**

1

**NORAX SUPPLEMENTS LLC,**

     **Plaintiff,**

**v.**

**JULIE SU,** in her official capacity as Acting Secretary of the United States Department of Labor,

**EVAN NORDBY,** in his official capacity as an Administrative Law Judge of the United States Department of Labor,

**UNITED STATES DEPARTMENT OF LABOR,**

*and*

**THE OFFICE OF ADMINISTRATIVE LAW JUDGES OF THE UNITED STATES DEPARTMENT OF LABOR,**

     **Defendants.**

**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT THEREOF**

Case No. 1:24-cv-00151-HCN_____

District Judge: Howard C. Nielson, Jr_____

Magistrate Judge _____

## RELIEF SOUGHT AND GROUNDS FOR RELIEF

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, Plaintiff Norax Supplements, LLC ("Plaintiff") respectfully moves this Court for a preliminary injunction enjoining Acting Secretary of Labor Julie Su ("Acting Secretary Su"), Administrative Law Judge Evan Nordby ("ALJ Nordby"), the United States Department of Labor ("DOL"), and the United States Department of Labor Office of Administrative Law Judges (collectively, the "Defendants") from conducting the unconstitutional administrative proceedings pending against Plaintiff before

the United States Department of Labor Office of Administrative Law Judges. *See Devan Slade v. Norax LLC d/b/a Somafina Nutraceutical Builders*, 2024-FDA-00020 (the "Administrative Proceedings").

In its recent watershed opinion in *Securities and Exchange Commission v. Jarkesy,* 144 S. Ct. 2117, 2127-28 (2024), the United States Supreme Court held that administrative adjudications of private rights violate the Seventh Amendment right to a jury trial where the dispute is "legal in nature." In the wake of the *Jarkesy* decision, the Administrative Proceedings—where an Article I administrative law judge, rather than a jury, makes findings of fact and determines the extent of Plaintiff's liability—are unconstitutional. Thus, Plaintiff now seeks to halt the Administrative Proceedings while this Court considers their constitutionality.

Plaintiff is entitled to this relief for four reasons. First, it is likely to succeed on the merits of its claim that the Administrative Proceedings violate its Seventh Amendment right to a trial by jury.  Second, Plaintiff will suffer an acute and irreparable injury if it is forced to participate in the Administrative Proceedings where it will be stripped of this constitutional right, a harm which will be "impossible to remedy once the proceeding is over." *See Axon Enterprise, Inc. v. Fed. Trade Comm'n,* 598 U.S. 175, 195 (2023). Third, the balance of equities tips in Plaintiff's favor because it stands to be deprived of this sacred right while Defendants stand to lose nothing more than the ability to conduct unconstitutional agency proceedings. Last, pausing the Administrative Proceedings pending resolution of this case will not adversely affect the public interest, as the public has no protectable interest in conducting proceedings which violate Plaintiff's constitutional rights.

**STATEMENT OF FACTS**

The complainant in the Administrative Proceedings is Devan Slade, Plaintiff's former employee. (Compl. at ¶ 2). In November 2023, Plaintiff acquired Slade's then-employer, UST MFG, LLC ("UST"), a contract manufacturer of dietary supplements. (*Id.* at ¶ 18).  Prior to the acquisition, Slade served as UST's Vice President of Regulatory. (*Id.* at ¶ 19). In that position, Slade was tasked with, among other roles, ensuring the safety and efficacy of UST's manufactured products and leading government, supplier, and customer audits of UST's facilities and operations. (*Id.*)

Around the time it acquired UST, Plaintiff learned that UST's Human Resource Department had launched several investigations into accusations that Slade mistreated his UST superiors, colleagues, and subordinates. (*Id.* at ¶ 20). After the acquisition, during an otherwise routine conversation with Plaintiff's Chief Executive Officer, Slade intimated that it was in the CEO's "best interest" to provide him with a promotion and pay raise in light of unspecified, but purportedly damaging, information he had about UST's past practices. (*Id.* at ¶ 21).  Rather than give in to Slade's extortionary demand, Plaintiff terminated Slade's employment on December 5, 2023. (*Id.*)

Two months later, on February 8, 2024, Slade filed a complaint with the United States Department of Labor's Occupation Safety and Health Administration ("OSHA") alleging that Plaintiff terminated him in retaliation for reporting an alleged problem with the labeling of a product that Plaintiff shipped shortly before his termination. (Compl. at ¶ 22). Slade's complaint alleged a violation of the Food Safety Modernization Act ("FSMA"), 21 U.S.C. § 399d. (*Id.* at ¶ 23). Two weeks later, OSHA's Denver Regional Office notified Plaintiff that it was being investigated for alleged violations of the employee whistleblowing protection provisions of both the FSMA and the Consumer Product Safety Improvement Act ("CPSIA"), 15 U.S.C. § 2087. (*Id.*).

An OSHA Regional Investigator then investigated Slade's allegations. (*Id*. at ¶ 27).  Subsequently, on June 3, 2024, the Deputy Regional Administrator for OSHA's Denver Region issued Acting Secretary Su's finding that there "was no reasonable cause" to believe Plaintiff violated either the FSMA or the CPSIA. (*Id.*)

The next day, Slade objected to Acting Secretary Su's findings and requested a *de novo* hearing before the Department of Labor Office of Administrative Law Judges pursuant to 21 U.S.C. § 399d and 15 U.S.C. § 2087. (Compl. at ¶ 28). On June 5, 2024, Chief Administrative Law Judge Stephen Henley notified the parties that the Administrative Proceedings had been docketed. (*Id*. at ¶ 29). Subsequently, on July 17, 2024, ALJ Nordby informed the parties that he had been assigned the matter for all purposes and that a multi-day evidentiary hearing on Slade's claims would take place before him on February 25, 2025. (*Id.* at ¶ 29).

On June 27, 2024, however, the United States Supreme Court issued its landmark decision in *Securities and Exchange Commission v. Jarkesy*, 144 S. Ct. 2117, 2127-28 (2024). Therein, the Court held that Article I administrative law judges cannot adjudicate legal claims which involve private rights because the Seventh Amendment to the United States Constitution requires that they be tried by a jury if so requested. *Id.* Thus, on September 16, 2024, Plaintiff filed a complaint with this Court seeking a declaration that the Administrative Proceedings violate its Seventh Amendment Right to a jury trial. (Compl. at ¶¶ 37-47).

## ARGUMENT

### I.   The Standard of Decision.

"To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the

threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). However, if a preliminary injunction would "alter the status quo," "the movant bears a heightened burden and 'must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of the harms.'" *Id.* (citing *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004)).

No heightened burden applies in this case, however, as Plaintiff's injunction would not alter the status quo. *See Free the Nipple-Fort Collins v. City of Fort Collins, Colo.,* 916 F.3d 792, n.3 (10th Cir. 2019) (defining the status quo as "the last peaceable uncontested status existing between the parties before the dispute developed."). In *Free the Nipple,* the plaintiff sought to enjoin the defendant city from enforcing a public nudity ordinance on equal protection ground. The Court of Appeals held that the "status quo" was the status between the parties "*before* [the city] enacted the challenged public-nudity ordinance." *Id.* (emphasis in original). Here too, the status quo is the status between Plaintiff and Defendants *before* the Administrative Proceedings were initiated. Because Plaintiff's injunction would restore, rather than alter, the status quo, no heightened standard is warranted. However, even if it was, Plaintiff is entitled to a preliminary injunction because of its overwhelming showing on each of the four factors discussed above.

## II.     A Substantial Likelihood Exists That Plaintiff Will Succeed on the Merits.

The first factor in the Court's preliminary injunction analysis is to determine whether a substantial likelihood exists that Plaintiff will succeed on the merits of its claim. *General Motors Corp.*, 500 F.3d at 1226.   Here, Plaintiff is nearly certain to show that the Administrative Proceedings violate its Seventh Amendment right to a jury trial. That Amendment guarantees that

in "Suits at common law. . . the right of trial by jury shall be preserved." U.S. CONST. amend. VII. The United States Supreme Court's holding in *Jarkesy* lays bare that the Administrative Proceedings violate this sacrosanct right. 144 S. Ct. at 2127-28.

In *Jarkesy,* the Supreme Court held that the Seventh Amendment entitles a defendant to a jury trial when the Securities and Exchange Commission ("SEC") seeks civil penalties for securities fraud. *Id.* at 2127. In reaching this conclusion, the Court utilized the two-step framework it established in *Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33 (1989). *Jarkesy*, 144 S. Ct. at 2127. First, the Court found that the SEC proceedings were "legal in nature," thus confirming that they implicated the Seventh Amendment. *Id.* at 2129.  Next, it determined that the SEC proceedings did not fall within the "public rights" exception to the Seventh Amendment. *Id.* at 2131. Based on these two conclusions, the Court went on to hold that the plaintiffs were entitled under the Seventh Amendment to have a jury adjudicate the claims against them. *Id*. at 1239.

While the Administrative Proceedings at bar are conducted by the United States Department of Labor rather than the SEC, the Court's holding is equally applicable here and conclusively establishes that Plaintiff is entitled to have a jury adjudicate Slade's claims.

### A.      *Like the Plaintiff in Jarkesy, Slade's Claims are Legal in Nature.*

In *Jarkesy*, the Supreme Court explained that the Seventh Amendment extends to statutory claims that are "legal in nature." *Id.* at 2128. In determining whether a statutory claim meets this definition, courts must consider: (1) whether the statutory claim has a common law analogue, and (2) more importantly, whether the remedies available under the claim sound primarily in law or equity. *Id.* at 2129; *accord Curtis v. Loether*, 415 U.S. 189, 194 (1974) (Seventh Amendment

"appl[ies] to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies").

Here, Slade's FSMA and CPSIA claims are whistleblower claims, which are analogous to a common law wrongful discharge claim. Moreover, Slade's claims seek compensatory damages, which are traditionally awarded by courts as a legal remedy. As such, they are legal in nature.

<ol type="i">
<li>Slade's Claims are Analogous to Common Law Wrongful Discharge Claims.</li>
</ol>

This first prong requires courts to consider whether the asserted claim is either "[a] cause of action that either was tried at law at the time of the founding or is ... analogous to one that was[.]" *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 708 (1999) (holding that a Section 1983 takings claim seeking relief is analogous to an action at law under the Seventh Amendment because they both provide redress for interference with property interests); *see also Jarkesy,* 144 S. Ct. at 2130 (concluding that the close relationship between federal securities fraud and common law fraud reveal that the SEC's claims were "legal in nature" for purposes of Seventh Amendment analysis).

Under the FSMA and CPSIA's whistleblower provisions, it is unlawful for an employer to "discharge an employee or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because the employee," *inter alia*, provides information either to his employer or to regulators about a violation of the respective statutes. *See* 21 U.S.C. 399d(a); 15 U.S.C. 2087(a). These statutory causes of action for retaliation, which effectively carve out public policy exceptions to the at-will employment doctrine, replicate common law causes of action for wrongful discharge. *See, e.g.*, *Waddoups v. Amalgamated Sugar Co*., 54 P.3d 1054, 1059 (Utah 2002) ("In Utah, wrongful termination in violation of public policy

is a tort."); *Ballalatak v. All Iowa Agric. Ass'n,* 781 N.W.2d 272, 275 (Iowa 2010) (finding that "a common law claim for wrongful discharge from employment [arises] when such employment is terminated for reasons contrary to public policy.").

While the Tenth Circuit Court of Appeals does not appear to have directly addressed whether the specific statutory whistleblower provisions Slade invokes replicate claims existing at common law, other circuits have recognized a strong similarity between analogous federal statutory causes of action for employment retaliation and common law torts prohibiting wrongful discharge. For example, the Ninth Circuit Court of Appeals has ruled that an employee who brought a whistleblower claim under the Energy Reorganization Act ("ERA"), 42 U.S.C. § 5851(a)(1)(A),[1] was analogous to a common law claim for wrongful discharge, a "tort so widely accepted in American jurisdictions . . . that it has become part of our evolving common law." *Temosaitis v. URS Inc.,* 781 F.3d 468, 486 (9th Cir. 2015) (citing *Spinelli v. Gaughan*, 12 F.3d 853, 857 (9th Cir. 1993)). Likewise, the Fifth Circuit Court of Appeals has "take[n] note of the common-law background to" the Sarbanes-Oxley Act's ("SOX") antiretaliation claim.[2] *Halliburton, Inc. v. Admin. Rev. Bd.,* 771 F.3d 254, 266 (5th Cir. 2014) ("At common law, many jurisdictions recognize torts for wrongful discharge of employment, which, in many cases, is essentially an antiretaliation claim analogous to" the SOX whistleblower provision.).

---

[1] *See* 42 U.S.C. § 5851(a)(1)(A) ("No employer may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee . . . notified his employer of an alleged violation of . . . the Atomic Energy Act of 1954).
[2] *See* 18 U.S.C. § 1514A(a) ("No [public company] may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment" for engaging in certain protected activity including providing information regarding a violation of an SEC rule or regulation to their employer.).

Notably, the FSMA and the CPSIA whistleblower provisions are nearly identical to those contained in the ERA and SOX. All four whistleblower provisions prohibit employers from "discharg[ing]" or "otherwise discriminat[ing] against" an employee with respect to the "terms" and "conditions" of their employment because the employee provides information to their employer or relevant government agencies about an alleged violation of their respective statutory schemes. Compare 21 U.S.C. 399d(a) and 15 U.S.C. 2087(a) with 42 U.S.C. § 5851(a)(1)(A), and 18 U.S.C. § 1514A(a). Given that all mirror common law claims for wrongful discharge, this Court should likewise recognize the common law origins of Slade's FSMA and CPSIA whistleblower claims.

ii.      The FMSA and the CPSIA Primarily Provide Complainants With "Legal Remedies."

The "more important" question for the Court to grapple with at this stage is whether the remedies available under the FSMA and CPSIA are primarily equitable or legal. *Jarkesy,* 144 S. Ct. at 2129. Critically, under both the FSMA and the CPSIA, the Secretary of the Department of Labor is entitled to award a complainant reinstatement "back pay" and other forms of "compensatory damages." 15 U.S.C. 2087(b)(3)(b); 21 U.S.C. 399d(b)(3)(B). And when a complainant opts to bring his whistleblower retaliation claim in federal court, both statutes authorize courts to award "compensation for any special damages sustained as a result of the discharge or discrimination." 15 U.S.C. ¶ 2087(b)(4)(B)(iii); 21 U.S.C. ¶ 399d(b)(4)(B)(ii).

Backpay is generally considered to be a legal, rather than equitable, form of relief. *See Millsap v. McDonnell Douglas Corp*., 368 F.3d 1246, 1253 (10th Cir. 2004) (backpay claims are "almost an exemplar of a claim at law" because they "'do not differ remedially from the personal injury claim for lost wages, or the contract claim for past wages due'") (quoting 2 Dan B. Dobbs, *Law of Remedies* § 6.10(5) (1993)); *accord Waldrop v. Southern Co. Serv., Inc.,* 24 F.3d 152, 158

(11th Cir. 1994) (noting that "it has long been the general rule that back wages are legal relief in the nature of compensatory damages"). This makes sense. "Backpay is compensatory because the award is measured by an employee's loss rather than an employer's gain." *Millsap*, 368 F.3d at 1253. Here, Slade explicitly seeks this relief when he demands "compensation for missed pay and benefits." (Compl. at ¶ 5).[3]

Compensatory damages are likewise "the classic form of legal relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993); *see also J.R. Simplot v. Chevron Pipeline Co.,* 563 F.3d 1102, 1116 (10th Cir. 2009) (holding that an action "for compensatory damages resulting from a breach of contract" is an action at law carrying with it the right to a jury trial); *Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1254 (10th Cir. 2004) ("At common law, the award of compensatory damages was peculiarly within the province of the law courts ... [and] therefore appropriately classified as legal relief."). For this reason, the "compensatory" and "special" damages available under federal antiretaliation statutes analogous to the FSMA and the CPSIA are routinely understood to include tort damages traditionally associated with personal injury claims, such as emotional distress, pain and suffering, humiliation, and mental anguish. *See Halliburton, Inc.,* 771 F.3d at 265-66 (holding that the availability of "special damages" under the SOX's

---

[3] In certain circumstances, courts have held that backpay can be an equitable remedy. See, e.g., *Chauffers, Teamsters and Helpers, Local 391 v. Terry,* 494 U.S. 558 (1990) (recognizing that a monetary award of backpay can be equitable if it is "incidental to or intertwined with injunctive relief"). This exception does not apply where a statute allows legal and equitable relief to be sought separately from one another, however. See *Tull v. United States,* 481 U.S. 412, 414-15 (1987) (holding that the Clean Water Act did not "intertwine" legal and equitable relief where injunctive relief and civil penalties were separate provisions of the statute, thus allowing the government to "seek an equitable remedy in addition to, or independent of, legal relief"). The FSMA and the CPSIA similarly allow backpay to be sought in addition to, or independent of, reinstatement. See CPSIA § 2087(b)(4)(A) (providing relief in the form of "reinstatement"); CPSIA§ 2087(b)(4)(B) (providing relief in the form of "the amount of back pay, with interest.")  Accord 21 U.S.C. § 399d(b)(4)(B)(i),(ii).

antiretaliation provision, 18 U.S.C. § 1514A(c), authorizes the recovery of "noneconomic compensatory damages[] including emotional distress and reputational harm"); *accord Lockheed Martin Corp. v. Admin. Rev. Bd., U.S. Dep't of Lab.*, 717 F.3d 1121, 1138 (10th Cir. 2013). Thus, the availability of traditional tort damages under the FSMA and CPSIA is "all but dispositive" of the fact that Slade's claims are "legal in nature" rather than equitable. *Jarkesy,* 144 S. Ct. at 2129.

Of course, "whether a remedy is legal in character is liberally interpreted . . . and the primary exception to the general rule is that damages are equitable when 'they are restitutionary, such as in "action[s] for disgorgement of improper profits.'" *Waldrop v. S. Co. Servs.*, 24 F.3d at 157 (11th Cir. 1994) (quoting *Terry,* 494 U.S. at 570; *Tull,* 481 U.S. at 424). Here, Slade seeks compensation for missed pay and benefits. (Compl at ¶ 5). This demand is not restitutionary, as Plaintiff did not obtain any improper gain by firing Slade.  *See Terry*, 484 U.S. at 570 (reasoning that the respondents' claims for backpay under Section 301 of the Labor Management Relations Act were "not restitutionary" because "[t]he backpay sought by respondent [was] not money wrongfully held by the Union" but rather "wages and benefits they would have received from [their employer] had the Union processed the employees' grievances properly.").

### B.      The Public Rights Exception Does Not Apply Here.

A "public rights" exception to the United States Constitution's Seventh Amendment exists by which Congress may "assign certain matters to agencies for adjudication even though such proceedings would not afford the right to a jury trial." *Jarkesy,* 144 S. Ct. at 2127. Such controversies were historically determined exclusively by either the executive or legislative branches, such as those concerning the collection of revenue, aspects of customs laws, immigration

12

laws, relations with Native American tribes, the administration of public lands, and the granting of public benefits. *Id.* at 2132-34.

Slade's FSMA and CPSIA whistleblower claims do not resemble such controversies. Rather, he presents a private dispute between an individual and his former employer -- exactly the type of claim that has been traditionally determined by the judicial branch. *See, e.g.*, *Jarkesy*, 144 S. Ct. at 2132 ("If a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory."); *cf. Foye v. Dabney*, 9 F. Cas. 650, 650 (D. Mass. 1853) (holding that a sailor was entitled to compensation when his discharge "was not voluntary on his part[] but coerced by the illegal conduct of the master"). Indeed, this conclusion is all but compelled given that the FSMA and CPSIA give a complainant the right to pursue his claims before an Article III court as opposed to executive tribunal. *See* 21 U.S.C. § 399d(b)(4)(A); 15 U.S.C. § 2087(b)(4).

### III.      Plaintiff Will Suffer Irreparable Harm if This Motion is Denied.

The second factor in deciding Plaintiff's request for a preliminary injunction is "whether irreparable injury will befall the movants without an injunction." *Free the Nipple-Fort Collins*, 916 F.3d at 805. "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001). Critically, "[m]ost courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Id.* at 806; *accord Awad v. Ziriax,* 670 F.3d 1111, 1131 (10th Cir. 2012) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."); *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) ("It has long been established that the loss of constitutional freedoms, for

13

even minimal periods of time, unquestionably constitutes irreparable injury.") (internal quotation and citation omitted). Thus, in the context of constitutional claims, the "constitutional-violation-as-irreparable-injury" principle collapses the first and second preliminary injunction factors, "equating likelihood of success on the merits with a demonstration of irreparable injury." *Free the Nipple-Fort Collins*, 916 F.3d at 806.

Here, Plaintiff's Seventh Amendment challenge to the ongoing Administrative Proceedings effectively meets this second factor; and no further showing of irreparable injury is necessary. *See Dominion Video Satellite, Inc.*, 269 F.3d at 1156.

### IV. The Threatened Injury to Plaintiff Outweighs the Harm, If Any, an Injunction Might Cause Defendants.

The third factor involves "balanc[ing] the irreparable harms . . . identified against the harm to the defendants if the preliminary injunction is granted." *Fish v. Kobach*, 840 F.3d 710, 754 (10th Cir. 2016). "When a constitutional right hangs in the balance. . .'even a temporary loss' usually trumps any harm to the defendant." *Free the Nipple-Fort Collins,* 916 F.3d at 806.

Here, the harm Plaintiff will experience if a preliminary injunction is not granted and the Administrative Proceedings continue is the loss of its sacrosanct right to a jury trial. *See Jarkesy,* 144 S. Ct. at 2128 ("The right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'") (citing *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935))

By contrast, Defendants have *no* legitimate interest in conducting an unconstitutional administrative proceeding. *See Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (ruling that the government "is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found

unconstitutional"); *accord Free the Nipple-Fort Collins,* 916 F.3d at 806 (wherein the Tenth Circuit Court of Appeals held that the city defendant "ha[d] no interest in keeping an unconstitutional law on the books").

The immediacy and severity of the harm to Plaintiff if the Administrative Proceedings continue to their conclusion, when contrasted to the lack of harm to Defendants in waiting for the Court to rule on the merits of this case, leans heavily in favor of Plaintiff. *See Awad v. Ziriax,* 670 F.3d 1111, 1131 (10th Cir. 2012) (reasoning that "when the law that voters wish to enact is likely unconstitutional, their interests do not outweigh [a plaintiff's] in having his constitutional rights protected").

## V.   Enjoining the Administrative Proceedings Will Not Adversely Affect the Public Interest.

Finally, an injunction should not harm the public interest. *General Motors Corp.* 500 F. 3d at 1226. At the same time, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Awad,* 670 F.3d at 1132; *accord Adams By & Through Adams v. Baker*, 919 F. Supp. 1496, 1505 (D. Kan. 1996) ("The public interest would best be served by enjoining the defendants from infringing on the plaintiff's right to equal protection."). Nor can the issuance of a preliminary injunction even be said to harm Slade's interests, as he retains the right to timely pursue his FSMA and CPSIA claims—albeit in an Article III court—under those statutes' "kick out" provisions. 21 U.S.C. § 399d(b)(4)(A); 15 U.S.C. § 2087(b)(4).  Thus, the public stands to lose nothing if this Court grants Plaintiff's request for a preliminary injunction.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter a preliminary injunction to halt the Administrative Proceedings pending resolution of this action.

Respectfully submitted this 17th day of September, 2024.

> BAKER, DONELSON, BEARMAN,
> CALDWELL & BERKOWITZ, P.C.
>
> /s/ David E. Gevertz
> David E. Gevertz
> *(Pro Hac Vice Pending)*
> Hannah E. Jarrells
> *(Pro Hac Vice Pending)*
> Gavin Childers
> *(Pro Hac Vice Pending)*
> 3414 Peachtree Rd NE, Suite 1500
> Atlanta, GA 30326
> Tel: (404) 221-6512
> dgevertz@bakerdonelson.com
> hjarrells@bakerdonelson.com
> gchilders@bakerdonelson.com
>
> Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send email notification to all counsel of record.

I certify that a copy of the foregoing was also served by registered or certified mail upon the following:

Trina A. Higgins, Esq.
United States Attorney for the District of Utah

16

United States Attorney's Office
111 South Main Street
Suite 1800
Salt Lake City, Utah 84111-2176

Jolene Ann Lauria
On Behalf of the Attorney General of the United States
Assistant Attorney General for Administration
United States Department of Justice
Justice Management Division
950 Pennsylvania Avenue NW
Room 1111
Washington, DC 20530

Julie Su
Acting Secretary of the United States Department of Labor
Office of the Secretary
An Agency within the United States Department of Labor
200 Constitution Ave NW
Washington, DC 20210

Evan Nordby
Administrative Law Judge
United States Department of Labor
Office of Administrative Law Judges
90 Seventh St
Suite 4-800
San Francisco, CA 94103-1516

United States Department of Labor
200 Constitution Ave NW
Washington, DC 20210

Office of Administrative Law Judges
An Agency within the United States Department of Labor
200 Constitution Ave NW
Room S-4325
Washington, DC 20210


Respectfully submitted this 17th day of September, 2024.


                                        BAKER, DONELSON, BEARMAN,
                                        CALDWELL & BERKOWITZ, P.C.

/s/ David E. Gevertz
David E. Gevertz
*(Pro Hac Vice Pending)*
Hannah E. Jarrells
*(Pro Hac Vice Pending)*
Gavin Childers
*(Pro Hac Vice Pending)*
3414 Peachtree Rd NE, Suite 1500
Atlanta, GA 30326
Tel: (404) 221-6512
dgevertz@bakerdonelson.com
hjarrells@bakerdonelson.com
gchilders@bakerdonelson.com

Counsel for Plaintiff